UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AGL INDUSTRIES, INC.,

               Plaintiff,                    **MEMORANDUM AND ORDER**
                                                      17-CV-4179 (PKC)(RER)
      - against-

CONTINENTAL INDEMNITY
COMPANY, APPLIED UNDERWRITERS,
INC., APPLIED UNDERWRITERS
CAPTIVE RISK ASSURANCE
COMPANY, INC., and APPLIED RISK
SERVICES, INC.,

               Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff brings this action against Defendants alleging violations of New York business, insurance, and common law in connection with Defendants' Reinsurance Participation Agreement ("RPA") insurance policy. Before the Court are Plaintiff's motion for a preliminary injunction and Defendants' motion to transfer venue. For the reasons stated herein, Plaintiff's preliminary injunction motion is denied and Defendants' transfer of venue motion is granted.

## BACKGROUND

**I.    Relevant Facts**

In 2016, Plaintiff AGL Industries, Inc., a steel fabrication and erection business located in Maspeth, New York, enrolled in Defendants' EquityComp Program (the "Program")[1] for the purpose of securing workers' compensation insurance. (Defendants Brief ("Defs.' Br."), Dkt. 21, at 10-11; Affidavit of Dominick Lofaso, Dkt. 23-2, at ¶ 3.)[2] As part of the Program, Plaintiff

---

[1] The exact nature and substance of the Program is at the heart of the parties' dispute.

[2] All page numbers refer to the pagination generated by the court's CM/ECF system and not the document's internal pagination.

entered into a "standard workers' compensation insurance policy" with Defendant Continental Indemnity Company ("Continental").[3] (Defs.' Br., at 11.) In addition to the standard insurance policy, Plaintiff also entered into the RPA with Defendant Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA").[4,5] (*Id*.) According to Defendants, Defendant Applied Underwriters, Inc. ("AUI")[6] manages the Program and Defendant Applied Risk Services, Inc. ("ARS")[7] acts as the billing agent for the Program. (*Id*.) The RPA contains a forum selection clause that states, in relevant part:

> ANY LEGAL SUIT, ACTION, OR PROCEEDING ARISING OUT OF, RELATED TO OR BASED UPON THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MUST ONLY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF NEBRASKA, IN EACH CASE LOCATED IN OMAHA AND THE COUNTY OF DOUGLAS, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. . . . THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

---

[3] Defendant Continental is an insurance company organized under the law of the State of Iowa, but has its principal place of business and headquarters in Omaha, Nebraska. (Compl., Dkt. 1-2, at ¶ 13.)

[4] Defendant AUCRA is an insurance company organized under the law of the State of Iowa, but has its principal place of business and headquarters in Omaha, Nebraska. (Compl., at ¶ 15.) AUCRA is a subsidiary of Applied Underwriters, Inc. (Dkt. 23-9, at ¶ 6.)

[5] Additionally, AUCRA entered into a separate reinsurance agreement, to which Plaintiff was not a party, with Continental's affiliate. (Defs.' Br., at 11.)

[6] Defendant AUI is a financial services corporation organized under the law of the State of Nebraska with an office in Omaha, Nebraska. (Compl., at ¶ 14.)

[7] Defendant ARS is a Nebraska corporation with an office in Omaha, Nebraska. (Compl., at ¶16.) ARS is a subsidiary of AUI. (Dkt. 23-9, at ¶ 5.)

(RPA, Dkt. 22-2, at ¶ 13(B).) Moreover, the RPA contains a choice of law provision that states, "This Agreement shall be governed by and construed in accordance with the internal laws of the State of Nebraska without giving effect to any choice or conflict of law provision or rule (whether of the State of Nebraska or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of Nebraska." (*Id.* at ¶ 13(A).) The Continental workers' compensation insurance policy issued to Plaintiff did not contain any similar forum selection clause or choice of law provision. (*See* 2016 Continental Policy, Dkt. 22-6.)

Subsequently, on May 15, 2017, Plaintiff signed a Promissory Note (the "Note") with AUI "and its affiliates and subsidiaries" regarding Plaintiff's unpaid insurance premiums. (Promissory Note, Dkt. 22-3.) The Note also contains a forum selection clause, stating that Plaintiff:

> HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITUATED IN DOUGLAS COUNTY, NEBRASKA, AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS WITH REGARD TO ANY ACTION, CLAIM, DISPUTE OR PROCEEDING RELATING TO THIS NOTE.

(*Id.* at ¶ 18.) The Note also has a choice of law provision stating that "THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEBRASKA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF." (*Id.* at ¶ 16.)

## II. Procedural History

On June 15, 2017, Defendant Continental issued a Notice of Cancellation (the "Notice") to Plaintiff indicating that it was cancelling Plaintiff's workers' compensation insurance for non-payment effective as of July 1, 2017. (Defs.' Br., at 18.) On June 29, 2017, Plaintiff filed the operative complaint in this action in New York state court seeking declaratory relief and asserting claims for breach of contract, violation of N.Y. Gen. Bus. Law § 349, and unjust enrichment. (Dkt.

1-2.) On July 5, 2017, Judge Allan B. Weiss of the New York Supreme Court, Queens County, issued an order to show cause staying the Notice and temporarily restraining and enjoining Defendants from cancelling Plaintiff's insurance policy. (Dkt. 1-5.) On July 13, 2017, Defendants removed the case to federal court and the temporary restraining order was continued pending this Court's decision on Plaintiff's motion for preliminary injunction. (Dkt. 1; Defs.' Br., at 19 & n.5.) Plaintiff's motion for preliminary injunction was fully briefed on September 1, 2017. (Dkts. 1, 9, 11.) While the parties were briefing that motion, Defendants sought, and were granted, permission to file a motion to transfer venue from this Court to Nebraska pursuant to the Note's and RPA's forum selection clauses. (Dkt. 8.) Defendants' motion to transfer venue was fully briefed on February 12, 2018. (Dkts. 20-25.)

On June 27, 2018, Plaintiff filed a letter requesting an "urgent" conference. (Dkt. 29.) The letter stated that, on June 18, 2018, Plaintiff received a second Notice of Cancellation of its insurance coverage for non-payment and that said cancellation would be effective as of July 4, 2018. (*Id.*) The Court held a conference on July 2, 2018, at which it heard argument on Plaintiff's preliminary injunction motion and then extended the July 5, 2017 temporary restraining order until 12:01 a.m. on August 1, 2018. (7/2/18 Minute Entry.)

## DISCUSSION

### A. Plaintiff's Motion for Preliminary Injunction

For the reasons stated on the record at the July 2, 2018 conference, Plaintiff's motion for preliminary injunction is denied. In principal, the Court found that Plaintiff could not demonstrate irreparable harm, since, as Plaintiff acknowledged at the conference, it was now able to obtain workers' compensation insurance from another provider. Accordingly, the Court ruled that the July 5, 2017 temporary restraining order would expire on 12:01 a.m. on August 1, 2018, at which

4

time Defendants may terminate Plaintiff's existing insurance policy with Defendants, as well as Plaintiff's participation in the Program.

**B. Defendants' Motion to Transfer Venue**

Defendants move to transfer this action to the United States District Court in Omaha, Nebraska or Nebraska state court pursuant to the forum selection clauses in the RPA and the Note. For the reasons discussed below, Defendants' motion is granted.

1. Enforceability of the RPA and Note

    *a. The RPA Cannot Be Voided* Ab Initio

As an initial matter, Plaintiff argues that the RPA is void *ab initio* because it is "an illegal workers' compensation policy" in violation of New York Insurance Law §§ 2314[8] and 2339[9]. (Plaintiff's Brief ("Pl.'s Br."), Dkt. 24, at 15.) Therefore, according to Plaintiff, the Court "cannot even reach the issue of whether the forum selection clause . . . is enforceable." (*Id.* at 18-22.) The Court rejects this argument. As the Southern District of New York recently held in *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*—a case also involving Defendant AUCRA and the same RPA at issue here—the remedy for the alleged violations of New York Insurance Law is rescissory damages, not the voiding of the RPA. 239 F. Supp. 3d 761, 775-80 (S.D.N.Y. 2017) (holding, *inter alia*, that "the plaintiffs have an implied

---

[8] NYIL § 3214 states: "No authorized insurer shall, and no licensed insurance agent, no title insurance agent, no employee or other representative of an authorized insurer, and no licensed insurance broker shall knowingly, charge or demand a rate or receive a premium that departs from the rates, rating plans, classifications, schedules, rules and standards in effect on behalf of the insurer, or shall issue or make any policy or contract involving a violation thereof."

[9] NYIL § 2339 states: "No member of or subscriber to a rate service organization, and no insurer which makes and files its own rates, shall charge or receive any rate which deviates from the rates, rating plans, classifications, schedules, rules and standards made and filed by such rate service organization."

right of action to seek rescissory damages under NYIL §§ 2314 and 2339"); *see also First Mercury Ins. Co. v. 613 N.Y. Inc.*, 609 F. App'x 664, 668 (2d Cir. 2015) ("[T]he weight of authority in New York holds that an insurance company's failure to comply with the licensing scheme of this State does not invalidate the insurance contract . . .") (quoting *3405 Putnam Realty Corp. v. Chubb Custom Ins. Co.*, 788 N.Y.S.2d 64, 65 (1st Dep't 2005)); *City of New York v. Britestarr Homes, Inc.*, 570 N.Y.S.2d 882, 887 (Sup. Ct. 1991) ("The court has carefully reviewed New York law; there is nothing which invalidates a policy issued by an insurer in violation of the Insurance Law.").[10]

### b. *No Fraud is Alleged with respect to the Forum Selection Clauses*

Even if the RPA was declared void as "a product of an illegal scheme in violation of NYIL" (Pl.'s Br., at 25), federal law supports the severability of a valid forum selection clause from a fraudulent contract as long as the forum selection clause itself was not the product of fraud or misrepresentation, *see Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974); *Charter Oak Oil Co. v. Applied Underwriters, Inc.* ("*Charter Oak II*")*,* No. 3:17-CV-0689 (SRU), 2018 WL 1046787, at *6 (D. Conn. Feb. 26, 2018) ("[G]eneral fraudulent inducement of a contract is not, by itself, grounds for finding a forum selection clause unenforceable. . . ."). Here, Plaintiff does not argue that the forum selection clause was the result of fraud or misrepresentation; therefore, it would be severable from the RPA, even if the RPA is ultimately found to be invalid.[11] The Court

---

[10] Plaintiff also fails to explain why the forum selection clause in the Note would not require this case to be transferred, even if the RPA was voided.

[11] *But see Charter Oak II*, 2018 WL 1046787, at *6. In *Charter Oak II*, the Honorable Stefan R. Underhill of the District of Connecticut declined to transfer the case before him to another district under the same circumstances presented here, explaining:

> [Plaintiff's] statutory claims address deceptive behavior predating the RPA containing the Forum Selection Clause, and the alleged deceptive behavior potentially induced the agreement to the RPA. Because I cannot disentangle the

6

will now turn to the merits of whether the RPA's and the Note's forum selection clauses should be enforced.

   2. The RPA's and Note's Forum Selection Clauses are Enforceable

      *a. Legal Standard*

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which states that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As the statute gives district courts broad discretion to determine when transfer is appropriate, courts adjudicate such motions based on case-specific considerations of both convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

However, where parties have entered into a valid forum selection clause, that clause "should be given controlling weight in all but the most exceptional circumstances." *Atl. Marine*

---

extent to which the alleged misrepresentations induced agreement to the Forum Selection Clause itself, I hold that the [Connecticut state law] claims at issue here are not covered by the Forum Selection Clause's general reference to claims "related to" the RPA. I do not go so far as to base my decision on the principle that a forum selection clause could not apply to such claims, and hold only that, at a minimum, for such an extreme interpretation in favor of coverage, the language of the clause must speak more clearly to its coverage of such claims. In so holding, I am cognizant of those district courts within this Circuit that have held otherwise, but I do not agree that the authorities to which those courts cite provide the necessary support for the expansion in the reach of generic forum selection clauses that would be created by their decisions.

*Id*. at *6 (emphasis omitted). The Court respectfully disagrees with Judge Underhill's conclusion on this issue. Even accepting Plaintiff's allegations of fraud with respect to the substantive terms of the RPA, this alleged fraud, on its face, does not go to the parties' negotiation or inclusion of the forum selection clause in the RPA. *See Scherk*, 417 U.S. at 519 n.14 (finding that a forum-selection clause in a contract is not enforceable only "if the inclusion of that clause in the contract was the product of fraud or coercion").

7

*Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 58 (2013). To determine whether a forum selection clause is enforceable, the Court must use the four-part test set forth by the Second Circuit in *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). "[T]he court must evaluate: (i) whether the clause was reasonably communicated to the party resisting enforcement; (ii) whether the clause is mandatory or permissive; (iii) whether the claims and parties involved in the suit are subject to the forum selection clause; and (iv) assuming that the preceding factors have been satisfied, whether the resisting party can overcome the resultant presumption of enforceability by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Charter Oak Oil Co. v. Applied Underwriters, Inc.* ("*Charter Oak I*"), No. 3:17-CV-00689 (SRU), 2017 WL 4018845, at *5 (D. Conn. Sept. 12, 2017) (quoting *Martinez*, 740 F.3d at 217), *adhered to on reconsideration,* No. 3:17-CV-0689 (SRU), 2018 WL 1046787 (D. Conn. Feb. 26, 2018). The second and third factors are analyzed under "the body of law selected in an otherwise valid choice-of-law clause", which, in this case, is Nebraska law. *Id.* (quoting *Martinez*, 740 F.3d at 217-18). The fourth factor is analyzed pursuant to federal law. *Charter Oak II*, 2018 WL 1046787, at *6 ("The analysis of Nebraska law cannot be grounded in the fourth prong of the *Martinez* framework, which requires enforceability to be analyzed according to federal law.") (citing *Martinez*, 740 F.3d at 217-18).

To satisfy the fourth factor and invalidate a presumptively valid forum selection clause, a party must show that: "(1) the clause is the result of fraud or overreaching; (2) the party will be deprived of its day in court as the result of the 'grave inconvenience or unfairness of the selected forum'; (3) the party may be deprived of a remedy due to the 'fundamental unfairness' of the chosen law; or (4) the clause contravenes a strong public policy of the forum state." *Jockey Int'l,*

8

*Inc. v. M/V "LEVERKUSEN EXPRESS"*, 217 F. Supp. 2d 447, 451 (S.D.N.Y. 2002) (quoting *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993)).

b. *Application of the* Martinez *factors*

In its briefing, Plaintiff does not respond to Defendants' argument that the forum selection clauses of the RPA and the Note are presumptively enforceable under the first three *Martinez* factors.[12] Therefore, the Court finds that Plaintiff has abandoned this argument and that Defendants have satisfied the presumption of enforceability of the RPA's and Note's forum selection clauses. *Di Giovanna v. Beth Israel Med. Ctr.,* 651 F. Supp. 2d 193, 208 & n.108 (S.D.N.Y. 2009) (finding that Plaintiff abandoned his claim where he "made no attempt to rebut" defendants' arguments) (collecting cases).[13]

Plaintiff's sole argument against enforcing the forum selection clause is that transferring this action to Nebraska would violate New York's public policy in favor of "granting insureds access to the courts of the State of New York for all disputes regarding policies written in and for residents of the State [of New York]." (Pl.'s Br., at 24-26.) Plaintiff cites no case law to support the existence of this alleged public policy and the Court is not convinced such a public policy

---

[12] To the extent the Court construes Plaintiff's brief as arguing that the claims and parties involved in the suit are not subject to the forum selection clause under the third *Martinez* factor because the RPA is invalid, the Court rejects that argument for the same reasons stated *supra*.

[13] The Court notes that Defendants have affirmatively conceded that they are all bound by the RPA's and the Note's forum selection clauses because "[a]lthough some of the Defendants are not direct signatories to the contractual [forum selection clauses], the doctrine of 'closely related' parties, as well as the interests of justice and judicial economy, warrant treating all of AGL's claims together." (Defs.' Br., at 38); *see also Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 569 (S.D.N.Y. 2016) ("Courts in the Second Circuit have permitted non-parties to enforce forum selection clauses where the signatory's claims against the non-signatory defendant are substantially identical to its claims against a signatory defendant."). Therefore, pursuant to the RPA, Defendants may not argue to the Nebraska courts that the courts lack personal jurisdiction over Defendants on *forum non conveniens* grounds. (*See* RPA, at ¶ 13(B).)

exists.  Indeed, as the district court found in *Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, the proposition that "invalidating the forum selection clause . . . contravenes New York's strong public policy to provide a protective local forum for local small businesses[,] . . . [u]nlike Plaintiff's factual allegations, . . . is a legal conclusion that the Court need not accept as true.  Plaintiff cites no authority that New York actually has such a public policy.  And, in fact, New York does not." 908 F. Supp. 2d 387, 398 (S.D.N.Y. 2012) (citations and internal quotation marks omitted).

In reviewing the record, the Court cannot identify any other factors that favor overcoming the valid forum selection clause.  Plaintiff does not state that it was fraudulently induced to sign the forum selection clauses or that it will be deprived of a remedy in Nebraska.  Additionally, Plaintiff has failed to argue, let alone establish, that litigating in Nebraska would constitute a "grave inconvenience".  *See M/S Bremen*, 407 U.S. at 17-18 ("Whatever 'inconvenience' [Plaintiff] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting.  In such circumstances it should be incumbent on the party seeking to escape [its] contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court.").  Therefore, the Court finds that the RPA's and the Note's forum selection clauses are valid and enforceable and that venue shall be transferred to state or federal court in Nebraska, as chosen by Defendants, consistent with the forum selection clauses in the RPA and/or Note.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for preliminary injunction is denied and Defendants' motion to transfer venue is granted. For the reasons set forth above, the Court orders that this action be transferred to state or federal court in Nebraska, as chosen by Defendants, consistent with the forum selection clauses in the RPA and/or Note, pursuant to 28 U.S.C. § 1404(a). No later than August 3, 2018, Defendants shall notify the Court in writing as to which court they wish this matter to be transferred. Following this election, the Clerk of Court respectfully is directed to transfer this action and close this case accordingly.

SO ORDERED.

/s/Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: July 19, 2018
      Brooklyn, New York